UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NB'TEHUTI HERU-PTAH DaGREAT,

                  Plaintiff,

   v.

RONALD HAYNES, *et al.*,

                  Defendants.

Case No. C21-5080-MJP-SKV

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff is currently confined at the Washington State Penitentiary in Walla Walla, Washington. The claim asserted in this action relates to events that occurred in May 2020 while Plaintiff was confined at the Stafford Creek Corrections Center ("SCCC") in Aberdeen, Washington. In particular, Plaintiff alleges that his Fourteenth Amendment right to due process was violated when legal books were removed from his property and disposed of because they were considered contraband. *See* Dkt. 6. Plaintiff identifies as Defendants in his complaint SCCC Superintendent Ronald Haynes,

REPORT AND RECOMMENDATION
PAGE - 1

SCCC Corrections Unit Supervisor ("CUS") J. Jolly, and SCCC G-Unit Sergeant T. Cardin. *Id*. at 3. Plaintiff seeks damages in the amount of $2.8 million. *Id*. at 7.

Defendants have filed a motion for summary judgment which is currently ripe for review. Dkt. 31. Defendants submitted in support of their motion the declaration of Defendant Tyler Cardin. Dkt. 32 (Cardin Decl.). Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (*see* Dkt. 33), and has had ample opportunity to file a response to Defendants' motion, but has failed to do so. The Court, having reviewed Plaintiff's complaint, Defendants' motion for summary judgment, and the balance of the record, concludes that Defendants' motion for summary judgment should be granted, and that Plaintiff's complaint and this action should be dismissed with prejudice.

## II.   BACKGROUND

Plaintiff alleges that his Fourteenth Amendment right to due process was violated when Defendants denied him adequate procedural protections before confiscating and disposing of his legal books. Dkt. 6 at 4. At issue are fourteen legal books from Blackstone Paralegal Studies that were in Plaintiff's possession on May 5, 2020, when he was transferred from the G-Unit at SCCC to the Intensive Management Unit ("IMU"). *Id*. at 4, Ex. B; Cardin Decl. at ¶ 7. Upon his transfer to the IMU, Plaintiff sent a kite to G-Unit Sergeant Cardin requesting that all his legal books be sent to the IMU. Dkt. 6 at 4-5. Sergeant Cardin acknowledges that prior to Plaintiff leaving the G-Unit, Plaintiff asked him to ensure the legal books were in Plaintiff's property, and Sergeant Cardin agreed to do so. Cardin Decl. at ¶ 7. After Plaintiff was escorted out of the G-Unit, Plaintiff's property was removed from his cell, and it was inventoried later that night in accordance with standard SCCC procedure. *Id*.

When Sergeant Cardin went to the property room the following day to ensure Plaintiff's books were packed with the rest of his property, he found a search report indicating that the books were not placed with Plaintiff's property because they did not comport with Washington Department of Corrections ("DOC") policy requirements. *Id*.

The DOC has specific policies governing the receipt and possession of books. In particular, inmates are permitted to receive new books sent directly from the publisher or an approved vendor, or used books from non-profit organizations approved by the Correctional Program Administrator. *Id*., Attach. C at 14 (DOC 450.100 (XI)(B)(1)-(2)). In addition, books must be marked with the inmate's DOC number in the center of the inside front cover of the book or along an unbound edge. *Id*., Attach. C at 15 (DOC 450.100 (XI)(D)); *see also*, *id*., Attach. B at 3 (DOC 440.000, Directive, (II)(B)(2)(a)). Inmates are specifically prohibited from trading, selling, buying, bartering, loaning, or giving away any personal property to another offender. *Id*. (DOC 440.000, Directive, (I)(D)).

The books were removed from Plaintiff's property because they did not have Plaintiff's name written on them, nor were they marked with Plaintiff's DOC number. *Id*. at ¶¶ 5, 7. According to Sergeant Cardin, it appeared that the books likely belonged to another inmate because the page where the inmate information was supposed to appear was torn out of the books. *Id*. at ¶ 7.

After reviewing the search report, Sergeant Cardin contacted Plaintiff in the IMU and, consistent with his normal practice, attempted to determine proper ownership of the confiscated books. *See id*. at ¶¶ 6, 7. According to Sergeant Cardin, this process typically includes asking the inmate if he has receipts or anything else that can authenticate proof of ownership. *Id*. at ¶ 6.

In this instance, Sergeant Cardin asked Plaintiff who owned the books. *Id*. Plaintiff apparently did not claim that the books had been acquired in accordance with DOC policy, and indicated he was unable to provide Sergeant Cardin with the owner's name or DOC number, stating that he only knew the inmate by a gang name. *Id*. at ¶ 7. Because Plaintiff was unable to provide proper authentication demonstrating that he was the owner of the books, the books were not considered his but were, instead, deemed contraband and were disposed of on May 12, 2020. *See id*. at ¶¶ 4, 7, Attach. D, E.

Plaintiff thereafter sent Sergeant Cardin multiple kites inquiring about his books, and he was repeatedly advised that the books had been disposed of because Sergeant Cardin was unable to verify proof of ownership. Dkt. 6, Exs. B, C, D; Cardin Decl. at ¶¶ 8-10, Attach. F, G, H. After Plaintiff was advised that the books had been confiscated and disposed of, he filed a grievance complaining that he had not been afforded any process through which he could have contested the reasons his property was confiscated. Dkt. 6, Ex. E. Plaintiff asserted that he should have been allowed to send his property home, and he asked that the books be replaced and that he be given $200. *Id*. Plaintiff's grievance was denied on the grounds that there was no evidence to support Plaintiff's claim that Sergeant Cardin disposed of books that belonged to Plaintiff because ownership of the books had not been proven. *Id*.

Plaintiff appealed the grievance response and asserted therein that all fourteen of the books in question had his DOC number in them, something he apparently did not claim when Sergeant Cardin originally confronted him about ownership of the books. Dkt. 6, Ex. F. Plaintiff argued that the fact that the books contained his DOC number, and the fact that the books were removed from his personal property, should have been sufficient to establish that he

owned the books. *Id.*, Ex. F. Plaintiff went on to the note that the books had been trashed and that ownership was "no longer relevant" because the process governing the confiscation of an inmate's personal property had been "overlooked." *Id.* Plaintiff requested compensation in the amount of $20,000. *Id.*

CUS Jolly investigated Plaintiff's grievance appeal, and SCCC Superintendent Ron Haynes provided the response. *Id.* Superintendent Haynes explained in his response that the books were destroyed because they had another inmate's DOC number in them. *Id.* Superintendent Haynes also noted that Plaintiff had admitted not having proof of ownership of the books. *Id.* Superintendent Haynes explained that because the books did not belong to Plaintiff, he was not given the option to donate, mail out, or destroy the property. *Id.*

Plaintiff appealed the Superintendent's response to DOC headquarters and argued that he should have been afforded the process described in DOC 440.000 for disposition of the books, even if the books did not contain his DOC number. Dkt. 6, Ex. G. Plaintiff requested that DOC compensate him in the amount of $1,500 for improperly disposing of his property. *See id.* Plaintiff's appeal was rejected, with the response noting that the books did not have Plaintiff's DOC number on them as required by DOC 440.000, and had the DOC number of another inmate, or more than one other inmate, on them.[1] *Id.* The response explained that the books

---

[1] There is some inconsistency in the record as to whether the books contained any information that would have allowed corrections staff to identify the owner of the books. Sergeant Cardin states in his declaration that the pages in the books where inmate information was supposed to appear were torn out, and he suggests that the owner of the books could not be determined. *See* Cardin Decl. at ¶ 7. Superintendent Haynes, in his response to Plaintiff's grievance, stated that the books had another inmate's DOC number in them. Dkt. 6, Ex. F. The headquarters response to Plaintiff's grievance likewise indicated that the books had the DOC number of at least one other inmate in them. *Id.*, Ex. G. Defendants make no effort to explain these inconsistencies. Nonetheless, as will be explained below, the record is devoid of any evidence that Plaintiff was the owner of the books which is the dispositive question here.

REPORT AND RECOMMENDATION
PAGE - 5

were therefore "treated, handled, and disposed of as contraband per policy and disposition was not required." *Id*. The response concluded that there was no indication of intentional wrongdoing by DOC employees, or any intentional act that violated DOC policy, and advised that if Plaintiff wished to pursue financial compensation, he could do so through the Tort Program. *Id.*

### III. DISCUSSION

Defendants argue in their motion for summary judgment that Plaintiff fails to state a claim against either Superintendent Haynes or CUS Jolly because he fails to allege facts demonstrating that either of these individuals personally participated in the violation of his due process rights. Dkt. 31 at 7-8. Defendants further argue that Plaintiff fails to present a viable Fourteenth Amendment claim because the property at issue was contraband, which Plaintiff had no interest in, and because Plaintiff has an adequate state remedy. *Id*. at 8-9. Finally, Defendants argue that they are entitled to qualified immunity from damages in this action because any violation of the Fourteenth Amendment was not clearly established. *Id*. at 9-11. Because this Court concludes that Plaintiff has not established any violation of a constitutional right, it need not address Defendants' qualified immunity argument.

A.     **Applicable Legal Standards**

1.     *Summary Judgment Standard*

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he

has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

"The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

### 2. Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983. *Lemire v. California Dep't of Corrs. & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection

exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

**B.     Analysis**

   *1.     Personal Participation*

As noted above, Plaintiff identifies three Defendants in his complaint, including Superintendent Haynes and CUS Jolly. Dkt. 6 at 3. In the introductory statement of his first, and only, claim for relief Plaintiff asserts that Sergeant Cardin and CUS Jolly violated his Fourteenth Amendment right to due process by denying him adequate procedural protections. *Id*. at 4. However, Plaintiff alleges no facts in support of any intended claim against CUS Jolly and he does not reference Superintendent Haynes at all in the statement of his claim. *See id*. at 4-6. A review of the exhibits attached to Plaintiff's complaint reveals that CUS Jolly investigated Plaintiff's level two grievance pertaining to the confiscation and destruction of the books at issue here, and that Superintendent Haynes signed the response to Plaintiff's level two grievance. *See* Dkt. 6, Ex. F. However, the grievance records do not demonstrate any personal participation by either Superintendent Haynes or CUS Jolly in the constitutional deprivation alleged in Plaintiff's complaint, *i.e.*, the failure to provide adequate procedural protections before the books were disposed of. Plaintiff therefore fails to adequately allege a cause of action against either Superintendent Haynes or CUS Jolly, and his claims against these Defendants must therefore be dismissed.

   *2.     Fourteenth Amendment*

Plaintiff's Fourteenth Amendment claim implicates only the conduct of Sergeant Cardin. The Due Process Clause protects prisoners from being deprived of property without due process

REPORT AND RECOMMENDATION
PAGE - 9

of law. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) (citations omitted). However, a due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). A prisoner must show the existence of a property interest that is protected by state law in order to obtain protection under the Due Process Clause of the Fourteenth Amendment. *See id*. at 577 (Property interests are not created by the Constitution, instead "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."). To assert such an interest, there must be a "legitimate claim of entitlement to it." *Id*.

In addition, only an authorized, intentional deprivation of property is actionable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). An authorized deprivation occurs pursuant to "state law, regulation, or institutionalized practice," and the normal pre-deprivation hearing is required to satisfy due process. *Haygood v. Younger,* 769 F.2d 1350, 1357 (9th Cir. 1985) (en banc), *cert. denied,* 478 U.S. 1020 (1986) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436 (1982)). An unauthorized intentional deprivation of property by a state employee does not constitute a Fourteenth Amendment violation if a meaningful post-deprivation remedy for the loss is available under state law. *Hudson,* 468 U.S. at 534.

Plaintiff presents no evidence demonstrating that he had a protected property interest in the books at issue here. The evidence demonstrates that Plaintiff was unable to provide proof that he was the owner of the books, or that he had obtained the books through the authorized DOC Procedure. In fact, it appears that Plaintiff admitted to Sergeant Cardin that he was not the owner of the books. *See* Cardin Decl. at ¶ 7. Because Plaintiff failed to provide proof of

REPORT AND RECOMMENDATION
PAGE - 10

ownership of the books, they were considered contraband under DOC policy. *See* Cardin Decl., Attach B at 3 (DOC 440.000, Directive, II(B)(2)(a). "An inmate does not have a property interest in possessing contraband." *Arteaga v. Alameida*, 2008 WL 364785, *10 (E.D. Cal. Feb. 8, 2008) (citing *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006); *Lyon v. Farrier*, 730 F.2d 525, 527 ) (8th Cir. 1984). Accordingly, Plaintiff did not have a cognizable property interest in the books and, thus, no process was due him prior to the books being confiscated.

Of some concern to the Court is the question of whether the books, even though deemed contraband, were properly disposed of in this instance. Pursuant to DOC 440.000, books that do not comply with DOC 450.100, are considered contraband and disposed of pursuant to the disposition section of DOC 440.000. *See* Cardin Decl., Attach. B at 3 (DOC 440.000, Directive, (II)(B)(2)(a)). The disposition section identifies options available to inmates for the disposition of unauthorized property. *See id.*, Attach B at 7-8 (DOC Policy 440.000, Directive, (XI)(A)). The disposition section is not entirely clear with respect to the disposition of contraband, though the implication is that such property will be destroyed pursuant to DOC Policy 420.375 which governs contraband and evidence handling.[2] *See id*.

The disposition section of DOC 440.000 also indicates that each facility is to have an appeal process in place to address property disposition which is supposed to include "the retention of offender property during the appeal process." *Id.*, Attach. B at 8 (DOC Policy 440.000, Directive, (XI)(A)(2)). This suggests that inmates are to be provided an opportunity to

---

[2] Defendants do not explain in any detail what DOC Policy 420.375 provides. Sergeant Cardin states in his declaration in support of Defendants' motion for summary judgment that this policy is restricted "due to sensitive security information and penological concerns" and is therefore not released to the public. Cardin Decl. at ¶ 3 n.1. This, of course, makes it difficult for the Court to know whether Defendants did, in fact, comply with their own policy regarding disposition of the property in question.

REPORT AND RECOMMENDATION
PAGE - 11

challenge decisions regarding disposition of property before such property is destroyed or otherwise disposed of.  This interpretation of the policy is consistent with the provision of the Washington Administrative Code ("WAC") that governs the disposition of personal property, WAC 137-36-040, which expressly provides that contraband items "for which ownership cannot be determined shall be held by the superintendent for six months and then donated to a charitable organization or destroyed."

The record makes clear that the books at issue here, which were deemed to be contraband when Plaintiff could not provide proof of ownership, were "hot trashed" within a week of the books having been discovered. *Id.*, Attach. D, E.  This rapid disposition appears to be contrary to both DOC 440.000 and WAC 137-36-040.  Sergeant Cardin states in his declaration that the disposition section of DOC 440.000 only applies to property which has been authenticated as the inmate's personal property and, in Plaintiff's case, the books were not authenticated as Plaintiff's personal property. *Id.* at ¶ 11.  It may be reasonable to interpret the disposition section of the policy, to the extent it provides inmates options of how to dispose of unauthorized property, to apply only to property for which the inmate has a legitimate claim of entitlement.  However, it is not clear that the section authorizes immediate destruction of property deemed to be contraband as occurred in this case.

Assuming the books were properly deemed contraband given Plaintiff's inability to prove ownership, and assuming that they should have been, but were not, retained for a sufficient period of time to allow Plaintiff to utilize whatever appeal process may have been in place, Plaintiff still has not stated a Fourteenth Amendment claim.  Any premature disposition of the books would appear to constitute an unauthorized, but intentional, deprivation of property which

REPORT AND RECOMMENDATION
PAGE - 12

does not constitute a Fourteenth Amendment violation if a meaningful post-deprivation remedy for the loss is available under state law.  *See Hudson*, 468 U.S. at 534.  Washington State provides a post-deprivation remedy for the alleged tortious conduct of state employees under RCW 4.92.  The statute requires the Washington State Department of Enterprise Services to make the process accessible by providing the tort claim form and instructions on its website, which it does.  RCW 4.92.100(1); *see* https://des.wa.gov/services/risk-management/file-claim.  Because the state provides an adequate statutory remedy for wrongful deprivation of property, any claim pertaining to the premature disposition of the books does not rise to the level of a constitutional violation cognizable under § 1983.

For all the reasons discussed above, Plaintiff has not established any violation of his due process rights arising out of the confiscation and destruction of the books at issue here.

## IV. CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion for summary judgment be granted, and that Plaintiff's complaint and this action be dismissed with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed

within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 20, 2022**.

DATED this 25th day of April, 2022.

*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14